ORRIN M. COWLES *vs.* THOMAS H. CANFIELD *et al.*

Argued April 19, 1892.   Decided May 5, 1892.

**Evidence.**—Evidence *held* sufficient to sustain the verdict.

Appeal by defendant Thomas H. Canfield from an order of the District Court of Otter Tail county, *Baxter*, J., made July 31, 1891, denying his application for a new trial.

The plaintiff, Orrin M. Cowles, was on November 2, 1885, owing defendant Canfield $700 and interest from April 1, 1885, at the rate of ten per cent. a year, amounting to $741.03.   The debt was not due. One half of it would fall due April 1, 1886, and the other half one year thereafter.   This debt was secured by a mortgage upon eighty acres of land, and by a chattel mortgage upon a horse which he had bought of Canfield.   On November 2, 1885, Cowles went to Lake Park, where Canfield had an office, to get him to take back the horse, or release the chattel mortgage and thereby enable him to sell the horse.   Canfield figured up the interest, and found the debt to be $741.03, and proposed to Cowles to release the horse and the eighty acres, and take new notes for $750, due part in one, and part in two years thereafter, bearing ten per cent. interest, and secured by a mortgage on one hundred and sixty acres of land belonging to Cowles. He said to Cowles this would give him a little commission.   Cowles accepted the proposal and executed the new securities, and Canfield received them, put the new mortgage on record, and discharged the old.   Nothing was said about the expense of drawing or recording the instruments, or who should pay for it, but Canfield paid for it. Nothing has been paid on the debt, and on February 12, 1891, Canfield commenced the foreclosure of the mortgage by advertisement under the power of sale therein.   This action was then commenced against him and the sheriff, John S. Billings, to restrain the sale, and to have the mortgage adjudged void for usury.   The action was tried May 22, 1891.   The court submitted to the jury this question:

"Was the $8.97 included in the renewal notes mentioned in the complaint, added to the sum actually due upon the original notes,

for the purpose of securing to the defendant Canfield a rate of interest greater than ten per cent. per annum.upon the debt due defendant from plaintiff?"

The jury answered this question "Yes." The defendant Canfield then moved the court upon the pleadings and the evidence for judgment in his favor, notwithstanding the verdict. This was refused, and he then moved for a new trial of the action, which was also refused, and he appealed.

*James W. Griffin* and *Chas. J. Bartleson,* for appellant.

In order to constitute usury there must be a corrupt intent, at the time the contract is made, to take more than the legal rate of interest for the use of the money loaned. There can be no usury in any transaction in which the parties do not intend to do the thing forbidden by law. *Condit* v. *Baldwin,* 21 N. Y. 219; *Lloyd* v. *Scott,* 4 Pet. 205; *Bank of U. S.* v. *Waggener,* 9 Pet. 378; *Lukens* v. *Hazlett,* 37 Minn. 441; *Jackson* v. *Travis,* 42 Minn. 438.

*Mason & Hilton,* for respondent.

The question was fairly submitted to the jury. To set aside the verdict and grant a new trial would be to usurp the functions of the jury. The only ground upon which the verdict can be set aside is that the jury believed plaintiff's testimony instead of defendant's.

GILFILLAN, C. J. The only question in the case is upon the sufficiency of the evidence to justify the finding of the jury that the $8.97 was included in the renewal note, for the purpose of securing a rate of interest greater than 10 per cent. per annum. The evidence was not very strong; but, as between the inconsistent accounts by plaintiff and defendant, the jury was at liberty to believe either, and it seems to have accepted that of the plaintiff instead of that of the defendant. And from the account given by plaintiff, it is not easy to assign a reason for including the above sum in the renewal note, other than that it was a part of the consideration for the renewal, for the forbearance, evidenced by that note. The sum was, it is true, comparatively small, but the statute makes no difference

in the effect of reserving a larger or smaller excess above the permitted rate.

Order affirmed.

MITCHELL, J., (*dissenting.*) I think that the evidence was wholly insufficient to justify the verdict. It appears that the parties were making a change of mortgage securities for the accommodation of the plaintiff. The amount of the debt then due was in fact $741.03, while the new securities were taken for $750, the difference ($8.97) being the amount of the alleged usury.

Defendant testifies, in substance, that, after figuring up the amount hastily, he suggested making the new notes for even $750, to cover his expense and trouble in making and recording the renewal papers, to which plaintiff assented; that the subject of bonus or extra interest was not mentioned; and that he had no intention or expectation of any such thing. Plaintiff's statement is that defendant, after figuring up the interest, said: "This amounts to a little over $741; suppose we make it $750. It will give me a little commission, but not much;" but he does not claim that the subject of extra interest was mentioned. Subsequently the plaintiff frequently asked for extensions, and promised to pay, accompanied with expressions of gratitude for defendant's kindness and forbearance, and never intimated or claimed that the notes were usurious until defendant commenced to foreclose, nearly six years afterwards. It is not enough to make the notes usurious that they might have been taken for more than was actually due. The excess must have been exacted for the use or forbearance of money. The essence of a usurious transaction is an unlawful intent on the part of the lender to take unlawful interest. Taking a practical, common-sense view of the evidence in this case, I think it utterly fails to establish any such intent. The most that can be claimed from it is that defendant may have charged more than was reasonable for the trouble and expense of changing the securities.

Application for reargument denied May 19, 1892.

(Opinion published 52 N. W. Rep. 135.)