## I. J. BARTLETT COMPANY v. O. A. NESS.[1]

October 5, 1923.

No. 23,498.

Replevin—new trial granted because of court's prejudicial remarks.

In this action replevining an automobile, plaintiff merely alleged ownership and right of possession; defendant alleged a purchase thereof, inability to pay an instalment when due, two extensions granted for usurious sums exacted; the reply predicated the right of ownership and possession upon the constitutional sales contract executed upon the last extension of time, and plaintiff when the trial opened announced that it stood on that contract. Such being the pleadings and position taken by plaintiff at the trial it is *held*:

(1) The court did not err in submitting as the sole issue whether defendant had proven the last contract void for usury; nor was there error in refusing to direct a verdict for plaintiff, based on the proposition that no usury in the extensions invalidated the original sales contract.

(2) Remarks of the court held so prejudicial to appellant that a new trial should be had.

Action in the district court for Goodhue county to recover possession of a certain automobile or for $1,000. The case was tried before Johnson, J., who when plaintiff rested denied defendant's motion to dismiss and at the close of the testimony denied plaintiff's

[1]Reported in 195 N. W. 39.

motion for a directed verdict, and a jury which returned a verdict in favor of defendant. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Reversed.

*Ell M. Rosenstein*, for appellant.

*A. J. Rockne*, for respondent.

HOLT, J.

Action in replevin in which defendant had a verdict. From an order denying its motion in the alternative for judgment or a new trial, plaintiff appeals.

The complaint alleged plaintiff's ownership and right of immediate possession to a certain Hudson automobile of the value of $1,000, also its wrongful detention by defendant. The answer alleged a purchase thereof by defendant from plaintiff on January 7, 1921, for $1,500; the payment of $900 of the price and the giving of a promissory note for $600, due May 1, 1921, and bearing interest at 8 per cent; the inability to pay the whole thereof when due and an extension of time for which plaintiff exacted a usurious charge of $27.50; the granting of a further extension on September 15, 1921, upon a further usurious exaction of $26 in addition to the interest stipulated; and a demand that the usurious instruments be canceled. The reply averred that the sale of the automobile was evidenced by a contract of January 7, 1921, under which title remained in plaintiff until payment of the purchase price with the right of plaintiff to retake the automobile if default was made; that default was made and because thereof the suit was begun. It was further alleged that the $27.50 received from defendant when the extension of May 7, and the $26 when the one of September 15 were given, went to pay the charges of the note brokers to whom plaintiff had transferred the promissory notes given by defendant in the transaction, and alleged that this was done for and at the request of defendant. The reply then "admits that on the 15th day of December, 1921, the said note for $426.00 became due and payable and alleges that by reason of the failure on the part of said defendant to pay said note the plaintiff herein was compelled to pay the same to the

holder thereof, thereby becoming the owner of said note, and the conditional sales contract given at the time of 'the execution of said note. That as the owner of the said conditional sales contract and note, the plaintiff elected to retake the said automobile upon default in said payment and has retaken the same."

At the trial plaintiff offered the note for $426 with the conditional sales contract executed September 15, 1921, and when defendant objected that these instruments were merely renewals and did not show the entire dealings, the court inquired of plaintiff's counsel whether those instruments were the basis of the cause of action. His answer was: "Yes, sir. If there are any renewal contracts, or anything else, it is part of their case and not part of our case." With the introduction of that note and contract plaintiff rested. Thus by both proof and pleading plaintiff planted its right of possession upon the last sales contract. Defendant, in attempting to prove the usury, introduced the original contract and the subsequent contracts with the notes, not already in evidence. To negative usury plaintiff offered a written order for the automobile executed at the time of the first contract, wherein plaintiff agreed to extend the time of payment, and defendant to pay for such extensions. Plaintiff's testimony also disclosed that the extension contracts and notes were accepted in payment of the previously executed instruments. When the evidence was in, plaintiff moved for a directed verdict on the ground that the automobile could be taken under the terms of the original sales contract, even though superseded by the renewal contract relied on in the reply and this be conceded tainted by usury and void. The motion was denied.

It is true that, if the original debt and security is free from usury, any extension of time by a substituted usurious security, does not preclude the holder of the debt from resorting to the original security. Burnhisel v. Firman, 22 Wall. 170, 22 L. ed. 766; Farmers & Mechanics' Bank v. Joslyn, 37 N. Y. 353; Patterson v. Birdsall, 64 N. Y. 294, 298, 21 Am. Rep. 609; Ganz v. Lancaster, 169 N. Y. 357, 62 N. E. 413, 58 L. R. A. 151; Morse v. Wellcome, 68 Minn. 210, 70 N. W. 978, 64 Am. St. 471; and Cain v. Bonner, 108 Tex. 399, 194 S. W. 1098, 3 A. L. R. 874, with annotation of cases. But some

regard must be paid to the issues as presented by the pleadings, the position taken by the holder of the debt at the trial, and the character of the action.

This was an action in replevin wherein plaintiff asserts the exclusive ownership and immediate right of possession to an automobile under a contract which absolutely forfeits all payments which had been made on its purchase. In justice and fairness defendant ought to have the opportunity to make the small payment yet due and to receive credit for all amounts paid pursuant to any usurious sums exacted for renewals. When usury was tendered as a defense, plaintiff should have placed itself in a position which indicated that it would rely on the original contract rather than on the one substituted. On the contrary, in the reply as well as when the court at the beginning of the trial, in order to make a ruling, inquired as to the basis of the action, plaintiff announced that it stood on the note and contract of September 15, 1921. If plaintiff had desired to go back to the original sales contract, the correct procedure is suggested in Eckhart v. Roehm, 43 Minn. 270, 45 N. W. 443. In Cowles v. Canfield, 49 Minn. 496, 52 N. W. 135, a suit to foreclose a mortgage substituted for a former mortgage securing the same debt, usury in the last mortgage defeated plaintiff, but there, as here, no attempt was made to resort to the original debt. The New York cases above cited were cases in which, by the pleadings or during the trial, relief was asked upon the original valid instrument.

Defendant argues that the agreement of plaintiff to grant extensions and of defendant to pay the charges therefor, as was done in the order for the automobile executed at the time the original sales contract was made, vitiated the entire transaction from start to finish. As we view the record this issue was not presented by the pleadings, and was not litigated in a manner to properly raise the point in the court below. The sales order was introduced, not by defendant but by plaintiff, for the purpose of proving a valid agreement to pay the renewal charges to a third person. Neither party had on this appeal properly raised or discussed the question whether the agreement referred to in the order and subsequent

renewal charges can taint the original sales contract with usury, and we do not feel called upon to consider the same, but attention is directed to the law as stated in Stein v. Swensen, 44 Minn. 218, 46 N. W. 360.

We therefore think there was no error in submitting to the jury as the sole issue in the case the question whether usury had been proven in exacting $26 in addition to interest when the sales contract of September 15, 1921, was made, nor in the denial of plaintiff's motion for a directed verdict. We also think there was evidence to sustain the verdict on the issue submitted. The renewal or extension was had between defendant and plaintiff. No other person was a party to the agreement. The money was paid to plaintiff; the new notes and sales contract ran to it.

Some rulings on the admission of evidence are complained of, but they do not require notice now, for a majority of the court deem a new trial necessary, at which it is unlikely that the court may have occasion to rule on the same questions.

The record shows that plaintiff (unnecessarily perhaps, Guthrie v. Olson, 44 Minn. 404, 46 N. W. 853; C. W. Raymond Co. v. Kahn, 124 Minn. 426, 145 N. W. 164, 51 L. R. A. [N. S.] 251) attempted to prove a demand before suit. Defendant was first called for cross-examination under the statute and admitted that he had a telephone communication with Mr. Hale, secretary-treasurer of plaintiff, after the $426 note became due. Thereupon Mr. Hale was called and testified that he had talked with defendant 2 or 3 times in plaintiff's office; that 2 or 3 days after December 15, the time the said note became due, he called defendant over the telephone, at Zumbrota, and talked to him. Then this occurred:

Q. "Do you know his voice?" A. "Well, I couldn't say positively that." Q. "Well, you called for who?" A. "I called for Mr. Ness." Q. "You talked to Mr. Ness?" A. "Yes, sir."

The court on motion struck out the last answer, and held the foundation insufficient to allow the conversation. At this point the court stated that he desired authorities on the subject. Neither counsel had any at hand, counsel for plaintiff stating: "I have no authority. It has been the practice to let in other telephone con-

versations that I have offered to introduce." The court remarked: "Talk is cheap, give me some law on it, if you have any." Some further discussion between court and counsel followed as to foundation for the introduction of the telephone communication, in which plaintiff's counsel called the attention of the court to the fact that defendant had testified that he had had a conversation with Mr. Hale at that time, but the court retorted that he had heard that testimony, and that counsel ought to be in position to sustain his stand by some law. The response was: "This question has never been raised as far as I know, never in my practice." Thereupon the court remarked: "That would not prove much." A recess of 10 minutes was then announced.

When the trial was resumed, and after Mr. Hale again testified that he had had 2 or 3 talks with defendant in the office, this question was put to him: "I will ask you whether or not the voice you heard over the telephone from Zumbrota was the same voice you heard in your office?" The answer being in the affirmative, he was asked to give the conversation. An objection was made. But the court said:

"Well, I think there is a foundation, such as it is. I think the witness stated before he didn't know this voice. He testitfied before he couldn't tell whether it was his voice or not. Now, he makes a different statement. That may be one way of practicing law."

Counsel said: "I would like to note an exception to the court's remarks. If the court insinuates—" The Court: "You sit down." The counsel: "May an exception be noted in that connection." The court: "Sit down in that chair or I will put you in jail for contempt of court. Sit down in that chair."

Jurors are prone to look for an indication as to which litigant ought to prevail in the attitude and remarks of the trial judge. Whether what was here said by the court was a reflection on plaintiff's witness or counsel, we feel that it must have prejudicially affected the plaintiff's right of recovery before the jury. Nor was there really an occasion for the discrediting remarks. Every telephone user, no doubt, has at times had the experience of being un-

able to recognize the voice of members of his own family over the instrument until the drift of the conversation has revealed the identity. Defendant had admitted a telephone communication with Mr. Hale, plaintiff's witness, and the evidence had so far revealed but one telephone communication. It is true, the conversation was received and the subject of demand was neither in dispute nor material, but the discrediting attitude toward counsel and witness shown by the learned trial court in the above recital must be held to have prejudicially affected plaintiff's contentions in respect to the usury charge. For this reason a new trial should be had.

Order reversed.