# EDMUND TIMM AND OTHERS v. FRANK SCHNEIDER.[1]

May 20, 1938.

No. 31,595.

[1]Reported in 279 N. W. 754.

2

*S. W. Jensch,* for appellants.
*Richard Converse,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiffs met with an adverse verdict. Their motion for new trial was denied, and they have appealed from that order.

In March, 1924, one Louise B. H. Dunbar secured a 20-year endowment policy of life insurance payable to plaintiffs, her brothers and sister. She was a widow, her husband having died in 1922. On April 25, 1930, she married defendant, Frank Schneider. On May 14, 1930, she made application for change of beneficiary (a right reserved under her policy contract) so as to make the insurance money payable to her husband. The change was promptly approved by the company. Thereafter the policy was kept with other papers

at the place of residence of defendant and the insured, both of whom had access thereto. Thereafter the husband made premium payments at his wife's request. She died in March, 1936. The proceeds of the policy, $749, there having been loans made against it by the insured during her lifetime, were paid to defendant as sole beneficiary. Plaintiffs claimed that the insured had been and was on May 13, 1930, suffering, and until her decease continued to suffer, "from mental disorders and disarrangements"; that while she was not possessed of "her normal and sane mental capacity," defendant, well knowing her "mental illness, disorder and disarrangements * * *" and "with a strong will and unyielding disposition wrongfully and unduly" influenced the insured to make application for change of beneficiaries from the plaintiffs to himself. They accordingly brought this suit to recover the proceeds so received by him. Defendant denied these allegations and averred mental competency on the part of the insured; also that ever since their marriage they had lived together as husband and wife until the time of her death and that the change of beneficiary was authorized by the policy. The reply put in issue the new matters pleaded in the answer. From this it will be seen that the issue was a narrow one. The jury by its verdict necessarily determined the facts against plaintiffs' contentions respecting mental incapacity. The question of undue influence was taken away from the jury, and plaintiffs concede that the court was right in so doing. There are other facts and circumstances appearing in the record concerning which discussion will be had later in the opinion under appropriate subdivisions thereof.

Plaintiffs' first claim is that a new trial should be granted "because the verdict is contrary to the uncontradicted evidence of the incompetency of the insured" at the time she made the change of beneficiary. With equal assurance defendant asserts that "plaintiffs failed to make out a *prima facie* case of mental incapacity." A review of the evidence leaves the situation where the best that can be said for plaintiffs is that a *prima facie* case was made. The court on this phase instructed the jury in language not attacked by plaintiffs either on the motion for new trial or in the brief.

· The rule of law applicable to situations such as here presented is succinctly stated in 2 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1937) § 1731, as follows:

"Mere mental weakness does not incapacitate a person from contracting. It is sufficient if he has enough mental capacity to understand, to a reasonable extent, the nature and effect of what he is doing." The sustaining cases are cited under note 92.

There is no doubt that Mrs. Schneider had sustained a nervous breakdown and was suffering with some delusions. That is why her husband took her to a hospital for treatment. There she received treatments for a period of some five weeks, after which she was taken back to her home. From that time on her mental and physical condition gradually improved. Defendant and wife continued to live and cohabit together as husband and wife. They lived normal lives together. She did the usual housework, dealt with grocers and others in the usual fashion of the ordinary housewife. She died from "bronchopneumonia, auricular fibrillation" in March, 1936.

We think the evidence amply sustains the verdict of the jury. Not only is there oral testimony to sustain the verdict but there is likewise this important factor: When Mrs. Schneider executed the instrument to make effective the change of beneficiary she wrote in the margin thereof, in her own handwriting, this significant statement: "In case of sickness or death F. Schneider to pay all expenses. [Signed] Mrs. Schneider." This we think goes a long way to dispel the notion that she did not know "what she was doing." See Schultz v. Oldenburg, 202 Minn. 237, 243, 277 N. W. 918, 921, 922.

■ It is next urged that the court erred in excluding plaintiffs' exhibit C. This was an instrument prepared by one Miss Carlson, "a social worker associated with Ancker Hospital." Her testimony was that as a social worker she was accustomed to attend hearings where insanity petitions are filed in the probate court. Her duties and responsibilities, official or otherwise, were not disclosed. This witness, at the close of the hearing on the petition to have Mrs. Schneider, the insured, committed as an insane person, dictated a

memorandum in which she undertook to set forth *her reasons* why the official board of inquiry to make findings on the question of insanity had failed to act. The exhibit is not included in the settled case. It is not in nor made a part of the record. As such no error can be predicated upon its exclusion. The law is well settled that:

"In order to secure review on appeal of a ruling of the trial court in admitting or excluding evidence it is indispensable in all cases that there should be a bill of exceptions or case containing the evidence erroneously admitted or excluded, the objection of counsel, the ruling of the court upon the objection, and so much of the other evidence in the case as may be necessary to enable the supreme court to review intelligently the action of the trial court." 1 Dunnell, Minn. Dig. (2 ed.) § 346, and cases cited under note 13.

The same rule must likewise be applied respecting the assignment of error relating to plaintiffs' exhibits D to J, inclusive, and certain docket entries of the probate court respecting Mrs. Schneider's alleged insanity. The important thing respecting these docket entries is that there was no "finding by anybody" as to Mrs. Schneider's mental competency. (It may not be amiss to remark that an examination of the record indicates nothing of an erroneous nature on the part of the trial court in excluding the proffered proof.)

Complaint is made with regard to the reception of evidence on cross-examination of Mrs. Strupp, one of plaintiffs, concerning an action theretofore brought by her against defendant. The error attempted to be charged is that this was bringing in a collateral matter and as such prejudicially affected plaintiffs' cause. This matter came into the case on the theory that the witness was possessed of malice, ill will, and hostility toward defendant. After some sparring between counsel, the complaint in the other action together with receipts executed by her prior to the bringing of that action were received in evidence. This resulted after counsel for plaintiffs had said on at least two occasions, "We have no objection." Under such circumstances, we can see no possible room for now claiming error. Matters of this nature are necessarily for the

determination of the trial court, and its discretion is a broad one. Proof of bias or ill will on the part of a witness or party "is always relevant and material." 6 Dunnell, Minn. Dig. (2 ed.) § 10350.

"Facts tending to show that a witness is interested in the result of the litigation, or is biased in favor of, or against, one of the parties, or has a motive for favoring one party as against the other, may be shown, as such facts have a bearing on the weight to be given to his testimony." Gibson v. Gray Motor Co. 147 Minn. 134, 136-137, 179 N. W. 729, 730.

■ The court is charged with having invaded the province of the jury and as having indicated by its rulings and general conduct of the trial that it was prejudiced in defendant's behalf. Reference is made to numerous "irregularities," in fact 22 separate remarks of the court are mentioned. Examination discloses that plaintiffs' counsel assumed an attitude of excessive zealousness. Every ruling made against him brought about an immediate verbal demonstration to prove that the court was in error. A careful review of the entire record fails to disclose anything which can be said even to hint that the court acted unfairly or unjustly. Rather, the record bespeaks an earnest desire to permit the parties to bring before the jury all relevant and competent testimony.

In the early part of the trial the court had sustained objections to Mrs. Strupp's testimony regarding conversations had with her deceased sister, the insured. The jury was excused while counsel argued the question of the admissibility of such conversations. After having heard arguments of counsel, the court with characteristic candor admitted its error in this regard and permitted plaintiffs to proceed upon the theory advanced by counsel. Conversations as well as acts of the insured were gone into fully. To illustrate the court's solicitude to have the facts brought out, we quote:

(By Mr. Jensch) Q. "Well, have you described, Mrs. Strupp, all that occurred?

Q. "No, I haven't. I can't remember it all. That is all—
The Court: "You have told us all you remember?
Witness: "Just let me think a minute.

The Court: "Just take your time.

Witness: "That was before we went to Iowa.

The Court: "If there is anything you haven't yet told us that you now remember, tell us. Just take your time."

Needless to say, the witness accepted the court's invitation and fully covered every item that her recollection permitted. She was a most loquacious witness and rambled along relating what others had said, her own notions of what ought to be, as well as what she thought about her sister's mental and other ailments. Naturally and properly, the court attempted to keep the testimony within reasonable bounds. As the record stands, however, there is no doubt that Mrs. Strupp was permitted to say much more than was legally permissible if rules of evidence are to have any place in the course of a trial.

■ The only portion of the charge plaintiffs criticize is the first sentence of paragraph 16. To obtain a clear understanding of what is really involved we quote the entire paragraph:

*"This is just another one of those cases which illustrate the frailty of the human mind and passion when dollars and cents are concerned.* It must be quite apparent to everyone of you that upon some of the vital matters in this case the testimony of some of the witnesses for plaintiffs and some of the witnesses for defendant is so widely divergent and so squarely contradictory that it may be difficult, if not impossible, for you to harmonize it upon the hypothesis that one or the other of the witnesses has been merely mistaken. While it is your duty to harmonize the testimony of the various witnesses so far as possible, yet if you believe from the testimony that any one or more of the witnesses has wilfully testified falsely to any material matter in this case, then, under the law, in your discretion, you are entitled entirely to disregard the testimony of that witness or witnesses, save insofar as his or her testimony has been corroborated by other credible testimony." (Italics supplied.)

It is the italicized portion which plaintiffs have picked out as "a disparaging remark on the merits of the case" and as tending to

"invade the province of the jury in its consideration of the matter." However, no exceptions were taken, nor was any suggestion made of any error in the court's charge. Not until the motion for new trial was made was the sentence mentioned thought to be erroneous. It was then bodily lifted out of its context in the hope that even an afterthought is better than none at all. We find nothing in the quoted instruction that by as much as inference points to any particular party as the one to whom alone the jury should apply it. If counsel thought the portion complained of was harmful to his clients' cause as singling out some individual representing them, it was his duty to speak promptly. Dehen v. Berning, 198 Minn. 522, 528, 270 N. W. 602, 605, 606. Evidently he then felt, as must anyone feel if not blinded by partisanship, that the court's charge was right.

In closing we think it proper to say that in the trial of cases the judge presiding should be something more than an honorary pallbearer at a funeral. He has duties to perform requiring prompt and positive determination of difficult problems. Naturally and properly, rulings must be decisive of the particular issue as and when raised. He is chosen to preside over a court that determines the personal and property rights and obligations of those who make up a community, good and bad, but fortunately more good than bad. Those who have business before the court have a right to expect that their affairs will be disposed of promptly and pursuant to law which treats one as it does another.

Order affirmed.

PETERSON, JUSTICE (dissenting).

I dissent. A careful reading of the record shows that plaintiffs did not have a fair trial. It seems to me that a new trial should be had in the interest of justice. Quirk v. Consumers Power Co. 127 Minn. 526, 149 N. W. 193; I. J. Bartlett Co. v. Ness, 156 Minn. 407, 195 N. W. 39; State v. Hansen, 173 Minn. 158, 217 N. W. 146; Grossman v. Lockedell & Son, 184 Minn. 446, 238 N. W. 893.