Sherri **NELSON**, as Personal Representative of the Estate of Mary Grill Mindl, Appellant,

v.

Ricky **HOLLAND**, Respondent,

All Other Persons Known or Unknown Claiming an Interest in Real Estate Described Below, Defendants,

Mary Louise Mindl, Deceased.

No. A09–245.

Court of Appeals of Minnesota.

Dec. 22, 2009.

Alan B. Fish, Roseau, MN, for appellant.

Michelle E. Moren, Law Offices of Patrick D. Moren, Roseau, MN, for respondent.

Considered and decided by WRIGHT, Presiding Judge; STONEBURNER, Judge; and STAUBER, Judge.

## OPINION

WRIGHT, Judge.

This appeal arises from the action of appellant-personal representative to set aside the sale of a parcel of property on the bases that, when the sale occurred, the decedent lacked the capacity to contract to sell the property and the contract resulted from undue influence. Appellant challenges the district court's grant of summary judgment to respondent-purchaser, arguing that (1) the district court erred when it held that appellant lacked standing to assert a claim on behalf of decedent's estate that could have been maintained by decedent's conservator prior to decedent's death and (2) the existence of disputed material facts precludes summary judgment. We reverse and remand.

## FACTS

Mary Mindl (decedent) was diagnosed with dementia and subsequently admitted to the Warroad Care Center in June 2004.

One year later, respondent Ricky Holland, who had been granted power of attorney for decedent's husband and had facilitated the drafting of his will, purchased from decedent and her husband a 2.5–acre parcel of property on the Northwest Angle (the property) for $40,000. This purchase price was approximately $22,000 below the tax-assessed value of the property. Shortly after the sale, appellant Sherri Nelson, decedent's granddaughter, petitioned the district court for guardianship and conservatorship over decedent. In support of the petition, Nelson argued that decedent lacked the capacity to make responsible decisions, had demonstrated behavioral deficits, and was unable to manage her property and business affairs. Nelson relied, in part, on the sale of the property as evidence of decedent's need for a conservator, stating that, while she was suffering from dementia and living in the nursing home, decedent had signed a document transferring to Holland real estate worth between $200,000 and $300,000. Although the district court appointed a guardian and conservator for decedent, it named Rebecca Rosenkrans, rather than Nelson, to serve in that capacity.

Rosenkrans remained decedent's guardian and conservator until decedent's death in August 2007. After the death, the probate court appointed Nelson as personal representative of decedent's estate. During the conservatorship, Rosenkrans did not challenge the sale of the property to Holland. But shortly after her appointment as personal representative of decedent's estate, Nelson commenced this lawsuit seeking to set aside the property sale.

On cross-motions for summary judgment, the district court entered judgment in favor of Holland. The district court concluded that, because decedent's conservator failed to move the district court to set aside the sale of the property, Nelson, as personal representative, lacked standing to assert the same claim on behalf of decedent's estate. Alternatively, the district court concluded that Holland was entitled to summary judgment because the record contained no disputed material facts and there was no legal basis to declare the sale of the property invalid. This appeal followed.

## ISSUES

I. Does a conservator's failure to assert claims on behalf of a conservatee prior to the conservatee's death preclude standing for a personal representative to assert those surviving claims on behalf of a decedent's estate?

II. Are there genuine issues of material fact precluding summary judgment?

## ANALYSIS

### I.

■ We review a district court's decision to grant summary judgment to determine whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). Although the issue of standing was not raised by either party in their respective motions for summary judgment, the district court held that "[a] personal representative does not have statutory power to challenge a transaction entered into by the deceased prior to death. [Nelson] has no standing as personal representative to void this transaction." Whether a conservator's failure to assert a claim on behalf of a conservatee prior to death precludes standing for a personal representative to assert that claim on behalf of a decedent's estate presents a question of law, which we review de novo. *See Longrie v. Luthen,* 662 N.W.2d 150, 153 (Minn. App.2003) (holding that issue of standing is

reviewed de novo), *review denied* (Minn. Aug. 19, 2003).

■ Nelson maintains that, as the personal representative of decedent's estate, she has standing to sue under Minn.Stat. §§ 524.3–703, 524.3–715 (2008). When interpreting a statute, we "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2008). When the legislature's intent is clearly discernible from a statute's unambiguous language, we interpret the language according to its plain meaning without resorting to other principles of statutory construction. *State v. Anderson*, 683 N.W.2d 818, 821 (Minn. 2004).

A personal representative has a fiduciary duty to "settle and distribute the estate of the decedent in accordance with the terms of any probated and effective will and applicable law, ... as expeditiously and efficiently as is consistent with the best interests of the estate." Minn.Stat. § 524.3–703(a). Consistent with that fiduciary duty, the personal representative must take possession or control of all of the decedent's property that is not properly in the possession of a third party. Minn.Stat. § 524.3–709 (2008). A personal representative also is authorized to bring suit on behalf of the estate. Minn.Stat. § 524.3–703(c). And "[e]xcept as to proceedings which do not survive the death of the decedent, a personal representative of a decedent ... has the same standing to sue ... in the courts of this state ... as the decedent had immediately prior to death." *Id.; see also* Minn.Stat. § 524.3–715(22) (2008) (authorizing personal representative to prosecute or defend claims or proceedings to protect the interests of estate and personal representative in performance of duties). A personal representative who fails to perform these duties may be personally liable to the estate's beneficiaries. Minn.Stat. § 524.3–712

(2008); *Goldberger v. Kaplan, Strangis & Kaplan, P.A.*, 534 N.W.2d 734, 739 (Minn. App.1995), *review denied* (Minn. Sept. 28, 1995).

■ A conservator has a fiduciary duty to "guard the entrusted assets." *In re Conservatorship of Moore*, 409 N.W.2d 14, 16 (Minn.App.1987). As such, the conservator may petition the district court to review any financial transaction, gift, or contract made by the conservatee during the two-year period before the establishment of the conservatorship. Minn.Stat. § 524.5–417(e) (2006). If the district court finds that the conservatee "was incapacitated or subject to duress, coercion, or undue influence when the transaction, gift, or contract was made," the district court may declare the transaction invalid. *Id.*

The district court appointed Rosenkrans as conservator in September 2006, less than two years after the sale of the property. Although the sale predates the conservatorship, Rosenkrans had the legal authority to seek the district court's review of the sale of the property prior to decedent's death. *See id.* We consider whether the conservator's unexercised legal authority somehow limits the powers of the personal representative under Minn.Stat. § 524.3–715(22) to challenge the sale after the decedent's death.

■ Whether a claim survives a party's death depends on "the substance, not the form, of the cause of action." *Beaudry v. State Farm Mut. Auto. Ins. Co.*, 518 N.W.2d 11, 13 (Minn.1994). Injuries that are personal to the decedent abate upon death, whereas injuries to the estate's property interests usually do not. *See Estate of Benson by Benson v. Minn. Bd. of Med. Practice*, 526 N.W.2d 634, 637 (Minn. App.1995) (holding that claim for invasion of privacy abates because "alleged injuries are so personal, a jury would have to guess

on the extent and nature of the decedent's emotional devastation, humiliation and ostracism"). For example, claims for breach of contract, tortious interference with contract, unfair representation, and wrongful death survive a party's death; but claims for invasion of privacy, assault, pain, suffering, emotional distress, and violations of the Minnesota Human Rights Act do not. *See* Minn.Stat. § 573.02 (2008) (contract and wrongful-death actions); *Thompson v. Estate of Petroff,* 319 N.W.2d 400, 404–05 (Minn.1982) (wrongful interference); *Lipka v. Minn. Sch. Employees Ass'n, Local 1980,* 537 N.W.2d 624, 629–30 (Minn.App. 1995) (unfair-representation claims survive but Human Rights Acts claims and claims for assault, intentional and negligent infliction of emotional distress, and discrimination do not), *aff'd,* 550 N.W.2d 618 (Minn. 1996). The injury at issue here is not personal in nature. Like a breach-of-contract claim, the measure of damages for a claim to invalidate a real-estate sale because the contracting party lacks capacity is readily ascertainable; and any injury is as much to decedent's estate as it was to decedent personally. Thus, whether because decedent lacked the capacity to contract or because the contract was the result of undue influence, Nelson's claim as personal representative to set aside the sale of the property survives decedent's death.

Because a claim to set aside the sale of the property due to undue influence or lack of capacity to contract survives a decedent's death and because the conservator's ability to seek judicial review of the transaction is independent of the personal representative's fiduciary duty to serve the best interests of the estate, the district court erred when it held that Nelson lacked standing to petition to set aside the sale of the property based on undue influence or decedent's lack of capacity to con-

tract. Summary judgment on this ground, therefore, was improperly granted.

## II.

### A.

Nelson also argues that the district court erred by granting summary judgment in favor of Holland because there are genuine issues of material fact. Summary judgment is properly granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.03. A genuine issue of material fact does not exist when the nonmoving party presents mere averments or evidence that creates only a metaphysical doubt as to a factual issue. *DLH, Inc. v. Russ,* 566 N.W.2d 60, 71 (Minn.1997). Similarly, a party may not defeat summary judgment without evidence that is sufficiently probative to permit reasonable people to draw different conclusions regarding an essential element of the case. *Id.*

In granting summary judgment, the district court found that (1) it could not "find that [decedent] was incapacitated on the basis of dementia alone," (2) "[d]ementia did not impede [decedent's] ability to understand the transaction as it was presented to her," and (3) decedent "understood her actions." Nelson maintains that each of these findings constitutes a disputed material fact.

██ Whether a party is competent to execute a contract is a question of fact. *Rebne v. Rebne,* 216 Minn. 379, 381, 13 N.W.2d 18, 19 (1944) ("Every case of this character must necessarily be determined by a consideration of the special facts involved and the inferences to be drawn therefrom."). A person is mentally compe-

tent to enter into a contract if the contracting party can understand the nature and effect of the party's actions when executing the contract. *In re Estate of Nordorf,* 364 N.W.2d 877, 880 (Minn.App.1985). Mental weakness alone is not sufficient to demonstrate that a contracting party is mentally incompetent if that party reasonably understands the nature and effect of entering into the contract. *Timm v. Schneider,* 203 Minn. 1, 4, 279 N.W. 754, 755 (1938).

It is undisputed that, when decedent contracted to sell the property to Holland, she had been diagnosed with dementia and was living at the Warroad Care Center. It also is undisputed that approximately 15 months after decedent contracted to sell the property, the district court declared decedent incompetent and appointed Rosenkrans as her guardian and conservator. But the facts are controverted as to decedent's mental capacity and the nature and extent to which her dementia affected her ability to reason and comprehend her actions when she contracted to sell the property.

The record contains two letters from decedent's treating physician. The first states that "[decedent] has dementia and should not be signing any legal documents." The second states that "[o]n the date of July 5, 2005 [decedent] would not have understood the nature and [e]ffect of executing a warrant[y] deed." In the record, there also are affidavits from others who were in contact with decedent during the relevant time period that provide examples of decedent's memory failure and inability to understand. This evidence is contradicted by the affidavit of Tamara Borgen, the notary who obtained decedent's signature on the contract. Ms. Borgen, who is not medically trained but who is employed by the attorney secured by Holland, states that, on June 2, 2005, "[de-

cedent] was fully aware of the transaction, was competent and was coherent to sign said Warranty Deed." The record also contains medical records submitted by both parties that attest to decedent's dementia, contend that her cognitive deficiencies were not newly diagnosed, and state that she had good days and bad days. When viewed in the light most favorable to Nelson, the record is replete with disputed facts regarding the material issue of decedent's mental competency when she and her husband contracted to sell the property to Holland.

### B.

The district court also held that there was "no undue influence by [Holland] on his part." In so holding, the district court found that

> [Holland's] persistence, along with his involved relationship with [decedent's husband], and to a lesser extent [decedent], provided him with the opportunity to purchase the land he desired. The evidence is clear that [Holland] was more involved in the lives of [decedent and decedent's husband] than [Nelson]. [Decedent's husband] essentially rewarded [Holland] with what appears to be a "good nephew" discount for the property because of his close relationship.

To reach this conclusion, the district court improperly resolved controverted material facts.

 To prove undue influence, the evidence must establish not only that influence was exerted, but also that the influence was so dominant and controlling of the influenced party's mind that, in making the contract, the influenced party ceased to act of his or her own free will, becoming "a mere puppet of the wielder of that influence." *See In re Estate of Congdon,* 309 N.W.2d 261, 268 (Minn.1981) (involving

undue influence over testator when drafting will). Whether conduct resulted from undue influence involves the weighing of factors, including whether the third-party influencer had the opportunity to exercise influence; whether the third-party influencer actively participated in the transaction; whether the transferor and third-party influencer had a confidential relationship; and whether there was an unreasonable or unusual disposition of property. *In re Estate of Opsahl*, 448 N.W.2d 96, 100 (Minn.App.1989).

 Although the record establishes that Holland worked closely with decedent's husband to draft his will and power of attorney, the nature and extent of Holland's relationship with decedent are in dispute. It is undisputed, however, that Holland, who had expressed his desire to purchase the property several times in the past, secured and assisted in compensating the attorney who drafted the contract to sell the property and the warranty deed transferring title and supplied the notary to observe decedent's execution of the documents. In addition, the record demonstrates that Holland purchased the property for substantially less than the tax-assessed value and perhaps the fair-market value as well. When viewing the record in the light most favorable to Nelson, reasonable people can draw different conclusions regarding whether Holland exercised undue influence and whether decedent lacked the capacity to contract. Accordingly, summary judgment was improperly granted.

## DECISION

Because a personal representative has standing to assert all surviving claims that a decedent had immediately prior to death and has a fiduciary duty to properly manage a decedent's entire estate, that a conservator did not seek review of decedent's property transaction prior to decedent's death does not preclude standing for the personal representative to assert surviving claims on behalf of the estate. Genuine issues of material fact exist as to the decedent's capacity to enter into a contract and whether the sale of the property was the result of undue influence. Accordingly, summary judgment was improperly granted.

**Reversed and remanded.**