CHARLES N. AKERS *vs.* CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA
RAILWAY CO.

Argued Oct. 15, 1894.     Affirmed Oct. 26, 1894.

No. 8871.

The duty to block frogs in railroad yards.

Laws 1887, ch. 16, requiring railway companies to block "frogs" in their yards and terminal stations, was designed for the protection of those rightfully on the premises, and not of trespassers, and does not abrogate the ordinary rules that, in order to recover from the owner or occupant on account of the unsafe condition of his premises, the injured party must have been rightfully upon them, and himself free from contributory negligence.

This duty not due to mere trespassers.

Upon the facts of this case there was no invitation, express or implied, on part of the defendant to the public to use its yard for purposes of travel, and hence it owed no duty to them to block its frogs so as to render the yard and tracks safe for travel.

They are trespassers who come without express or implied invitation.

To render the owner of premises liable (in the absence of actual malice) for their unsafe condition, it is not enough that he suffered, in the sense of not expressly and continuously forbidding, their use by people who entered merely for their own convenience, and from motives to which no act of the owner contributed. He must have invited their use in that way, either expressly or impliedly by acts which led people to believe that the premises were intended by him to be so used, and that such use was in accordance with the intention and design with which they were prepared or allowed to be used.

Appeal by plaintiff, Charles N. Akers, as administrator of the estate of Frank A. Erling, deceased, from an order of the District Court of Ramsey County, *J. J. Egan*, J., made February 17, 1894, denying his motion for a new trial.

Erling was killed November 10, 1890, between eight and nine o'clock in the evening in the railroad yard of the defendant, the Chicago St. Paul Minneapolis & Omaha Railway Company in East St. Paul. He was run over by freight cars that the company was then switching on its tracks. The plaintiff was appointed adminis-

trator of his estate *de bonis non* and prosecuted this action under 1878 G. S. ch. 77, § 2, as amended by Laws 1889, ch. 109.   After the evidence was all submitted the defendant moved the court to direct a verdict in its favor.   The motion was granted, plaintiff excepted, moved for a new trial and being denied appeals.

*E. F. Lane,* and *D. D. Williams,* for appellant.

Laws 1887, ch. 16, requires defendant to block the frogs in its yard. The failure of the defendant to so block this frog was the proximate cause of the death of plaintiff's intestate.   Laws 1887, ch. 16, § 3, imposes an absolute liability upon defendant for any damage to any person who may be injured by its failure to keep frogs in its yards or terminal stations blocked as required by § 1 of the law, and the fact that such person may be a technical trespasser is no defense. *Watier* v. *Chicago, St. P. M. & O. Ry. Co.,* 31 Minn. 91.

The question as to whether the catching of Erling's foot in the frog was the proximate cause of his death should have been submitted to the jury.   *Deisen* v. *Chicago, St. P. M. & O. Ry. Co.,* 43 Minn. 454; *Criss* v. *Chicago & N. W. Ry. Co.,* 88 Ia. 741.

The evidence shows that many persons, other than employees of the defendant, were in the habit of crossing, recrossing and walking upon the tracks, at and near the place of the accident at all times of the day and evening without objection on the part of the defendant; that the tracks were so situated as to afford the most convenient way of approach to the passenger depot, and the various buildings of the defendant in the locality, and that persons get off the passenger trains and walk upon the tracks in all directions toward their homes, and that there was a beaten path from Payne avenue down to the tracks near the place of the accident, and that persons were frequently seen passing and repassing upon the tracks.   Railway companies not only owe a duty to persons lawfully upon their tracks but a duty to the public to exercise the right conferred upon them with a due regard to the safety of all persons, and this is particularly true of such acts as leaving unblocked frogs in places where persons are in the habit of walking either for business or pleasure.   *Mark* v. *St. Paul, M. & M. Ry. Co.,* 32 Minn. 208; *Johnson* v. *Lake Superior T. & T. Co.,* 86 Wis. 64; *Hicks* v. *Pacific Ry. Co.,* 64 Mo. 430.

No person saw the accident occur, and during all the time that Erling was on the tracks of defendant it would be presumed that the deceased, governed by the instinct of self preservation, did what a prudent man ordinarily would do to save his life. *Hendrickson* v. *Great Northern Ry. Co.,* 49 Minn. 245.

*Thomas Wilson,* for respondent.

The defendant owed to a trespasser no duty to block the frogs in its yard. *Sweeney* v. *Old Colony & N. Co.,* 92 Mass. 368; *Flower* v. *Pennsylvania R. Co.,* 69 Pa. St. 210; *Toomey* v. *Southern Pac. R. Co.,* 86 Cal. 374; *Palmer* v. *Chicago, St. L. & P. R. Co.,* 112 Ind. 250; *Gregory* v. *Cleveland, C. C. & I. R. Co.,* 112 Ind. 385; *Wright* v. *Boston & A. R. Co.,* 142 Mass. 296; *Murphy* v. *Boston & A. R. Co.,* 133 Mass. 121; *Johnson* v. *Boston & M. Railroad,* 125 Mass. 75; *Illinois Cent. R. Co.* v. *Godfrey,* 71 Ill. 500; *Nicholson* v. *Erie Ry. Co.,* 41 N. Y. 525; *Morgan* v. *Pennsylvania R. Co.,* 7 Fed. Rep. 78; *Studley* v. *St. Paul & D. R. Co.,* 48 Minn. 249; *Scheffler* v. *Minneapolis & St. L. Ry. Co.,* 32 Minn. 518; *Johnson* v. *Truesdale,* 46 Minn. 345; *Tucker* v. *Baltimore & O. R. Co.,* 59 Fed. Rep. 968.

Even if we are in error as to the position above taken, still the plaintiff could not recover for the reason that the gross negligence and recklessness of the deceased caused, or directly contributed to, the injury. *Rogstad* v. *St. Paul, M. & M. Ry. Co.,* 31 Minn. 208; *Abbett* v. *Chicago, M. & St. P. Ry. Co.,* 30 Minn. 482; *Bengtson* v. *Chicago, St. P., M. & O. Ry. Co.,* 47 Minn. 486; *Bouwmeester* v. *Grand Rapids & I. R. Co.,* 67 Mich. 87; *Tucker* v. *Baltimore & O. R. Co.,* 59 Fed. Rep. 968.

The question was properly one for the court, and not for the jury. *Baulec* v. *New York & H. R. Co.,* 59 N. Y. 356; *Rogstad* v. *St. Paul, M. & M. Ry Co.,* 31 Minn. 208; *Bowditch* v. *Boston,* 101 U. S. 16; *Oscanyan* v. *Arms Co.,* 103 U. S. 261.

MITCHELL, J. Defendant's yard in which the deceased was injured is situated in East St. Paul. The yard extends from Greenbrier street, on the east, to and beyond Jesse street, on the west. There was no street crossing the yard at grade, Jesse street not being open

through the yard, and Payne avenue and Edgerton street crossing it on elevated bridges. Along the north side of the yard there was a high board fence with a barbed wire on its top.  Sometimes people who wished to make a short cut to or from the north side pulled off a board from the fence, and passed through, but when this was discovered the employés of the defendant would close up the opening.  The regular approach to the depot, and the one provided by the company, was on the south side, by way of Farquier street; people on the north side passing over the elevated bridges on Payne avenue and Greenbrier street.  It appears that persons who for mere reasons of convenience to themselves desired to make a short cut to or from the depot of defendant, instead of using the way of ingress and egress provided by it, frequently traveled along the tracks in the yard of the defendant, and made their way through openings in the fence on the north side, particularly at Payne avenue. · But there is no evidence that the defendant ever, either expressly or impliedly, invited them to do so, or ever by word or act led any one to believe that its yard was intended or suited for any such purpose, or that it authorized it to be so used.  The most that can be claimed from the evidence is that defendant suffered people to use it in that way, in the sense that it did not constantly expressly forbid or prevent their doing so.

From the east end of the yard to a point west of the depot there were three tracks.  The south one was used by trains to the depot. The north one was seldom used, and only for engines passing to or from the roundhouse, and for taking supplies to defendant's storehouse.  The middle track was used almost continuously, many times an hour day and night, in switching cars to and from the numerous tracks on the west.  The deceased had for some three years prior to the accident been in the employ of the defendant as "storekeeper," his office being in the "Storehouse," but on the morning of that day he had resigned his place, and "taken his time," and left the employment of the defendant, and another man had been put in his place; and he was not seen about the premises until the evening of that day, between eight and nine o'clock of November 10th, 1890, when he was struck by some cars, which were being switched on the middle track, and sustained the injuries of which he died.

While other acts of negligence were alleged in the complaint, yet they were all expressly waived on the trial, and the plaintiff's right of

recovery was rested exclusively upon the alleged failure of the defendant to block a frog situated between the storehouse and the depot, as required by Laws 1887, ch. 16; the contention being that the foot of the deceased was caught in the frog, that he was unable to extricate it, and hence unable to get out of the way of the approaching cars. The evidence tends very strongly to show:

*First,* That the deceased, while walking longitudinally on the tracks, was struck by the cars quite a distance east of the frog, and that, being dragged along by the moving cars, the heel of his foot was crowded into or otherwise fastened in the frog;

*Second,* That, even if lawfully upon the premises, deceased was guilty of gross negligence in walking on a dark night upon the middle track, which, from his knowledge of the yard, he must have known was being constantly used for switching, when he might as easily have walked upon the north track, which was seldom used, or, still better, have gone north of all the tracks.

But, waiving these questions, and assuming that there was evidence that the frog was not properly blocked, and that this was the proximate cause of the injury, there is still, to our minds, a conclusive reason why plaintiff cannot recover. Under the facts the deceased was a trespasser (in the legal sense of that term) on the premises, and the defendant owed him no duty to keep the frog blocked so as to make the yard a safe place in which to travel.

(Actionable negligence is the failure to discharge a legal duty to the person injured. If there is no duty, there is no negligence. Even if a defendant owes a duty to some one else, but does not owe it to the person injured, no action will lie.) The duty must be due to the person injured. These principles are elementary, and are equally applicable whether the duty is imposed by positive statute or is founded on general common-law principles. And the principle is the same whether the statute expressly declares that a person shall be liable for any damage sustained by reason of its breach, or merely imposes the duty, with a penalty for its nonperformance. (A violation of a statutory duty can be made the foundation of an action only by a person belonging to the class intended to be protected by such regulation, and all statutes requiring the owner or occupant of premises to adopt certain precautions to render them safe are designed for the protection, not of the wrongdoers or trespassers, but of those who

are rightfully upon them.    Hence it is held universally, except perhaps in Tennessee, that in case of noncompliance with such a statute the injured person, in order to recover, must have been rightfully in the place, and free from contributory negligence.    Such statutes were never designed to abrogate the ordinary rules that, to recover, the neglected duty must have been due to the party injured, and that he himself must have been free from contributory negligence.    See Bishop, Noncont. Law, § 850, and Shearman & R. Neg. (4th Ed.) § 13, and cases cited.

The fact that the deceased had once been in the employ of the defendant, when his duties required him to go upon these tracks, is wholly immaterial.    His employment, and with it defendant's duty to him as its servant, had terminated.    Therefore, at the time of the accident, he stood in precisely the same position as any one of the public who had never been in defendant's employ.    Whatever might have been the purpose for which the deceased, on that unfortunate night, went upon defendant's premises, it is clear that it was not upon the invitation or license, express or implied, of the defendant. He was not there rightfully any more than would any other member of the public who might have gone there for reasons of his own convenience and pleasure, and from motives to which no act of the defendant contributed.    In other words, he was a mere trespasser. The mere passive sufferance on part of the defendant of the use of its yard by people in the manner already stated for purposes of their own convenience did not, under the circumstances, imply any representation on its part that they were fit for such use, or involve it in any liability to such persons for their unfitness for such use.    The defendant had provided, as must have been apparent to all, an adequate and safe way of ingress and egress to and from its trains; and those who, for reasons of their own, saw fit to approach or leave the premises by another way than that designated,—as by walking through this yard,—took all the risk upon themselves, and would have no right to complain of any defects in the premises, unless the act was malicious, or committed under circumstances showing that the owner was grossly and purposely indifferent to human life and limb,—as in the case of setting snare guns and the like for the express purpose of killing or injuring trespassers.    Whenever the owner or occupant, in the absence of malice, has been held liable because of the unsafe

condition of his premises, according to every well-considered case "the gist of the liability consists in the fact that the person did not act merely for his own convenience and pleasure, and from motives to which no act of the owner or occupant contributed, but that he entered upon the premises because he was led to believe that they were intended to be used by visitors and passengers, and that such use was not only acquiesced in by the owner or person in possession, but that it was in accordance with the intention and design with which the way or place was adapted and prepared or allowed to be used."

There was on part of the defendant no invitation, express or implied, to the public to walk on these tracks, and no representation, express or implied, that they were intended for or adapted to any such use; and hence, as to such public, including the deceased, it owed no duty to keep this frog blocked. The statute was intended for the protection only of those who might be rightfully there, and only to such is the defendant liable for its violation. These propositions are so well settled that a citation of authorities is unnecessary, but for a full discussion of the principles involved see the opinion in *Sweeny* v. *Old Colony & N. R. Co.*, 92 Mass. 368, from which we have quoted.

Order affirmed.

(Opinion published 60 N. W. 669.)