ANNE MURPHY v. BARLOW REALTY COMPANY
AND OTHERS.
DINAH ZELICKSON v. SAME.[1]

January 2, 1943.

Nos. 33,204, 33,205.

[1]Reported in 7 N. W. (2d) 684.

See 206 Minn. 527, 289 N. W. 563; 206 Minn. 537, 289 N. W. 567.
*Sexton, Mordaunt, Kennedy & Carroll,* for appellant.
*Maugridge S. Robb* and *R. Paul Sharood,* for respondents.

HENRY M. GALLAGHER, CHIEF JUSTICE.

Two actions, consolidated for trial in district court, were heard together on appeal. The case of Anne Murphy for personal injuries resulted in a verdict for plaintiff for $12,500, and that of Dinah Zelickson, special administratrix of the estate of Max Zelickson, deceased, for wrongful death, resulted in a verdict in her favor for $10,000. Both verdicts were against defendant Barlow Realty Company. Defendant Red River Lumber Company was dismissed early in the course of the trial, and after plaintiffs had presented evidence which failed to show wilful negligence on the part of defendant Ernest M. Ganley Company, Inc., the trial court directed verdicts in its favor. Barlow Realty Company appeals from orders denying its respective motions for judgment *non obstante* or a new trial.

This is the fourth appearance of these cases in this court. In Murphy v. Barlow Realty Co. 206 Minn. 527, 289 N. W. 563, we held that the complaint stated a cause of action against the Ernest M. Ganley Company. In the appeal reported in Murphy v. Barlow Realty Co. 206 Minn. 537, 289 N. W. 567, we affirmed orders of the trial court striking certain paragraphs of defendants' answers. Thereafter we dismissed without opinion an appeal from an order denying Barlow Realty Company's motion for an order to bring in additional parties defendant and discharged an order requiring the trial court to show cause why other parties should not be brought in as additional defendants.

The actions arose out of the collapse on October 27, 1937, of part of the building known as Commission Row, located at 208-210 North Sixth street in Minneapolis. The building was owned by Barlow Realty Company and at the time of its collapse was leased to and occupied by the Morris Fruit & Produce Company. Anne Murphy and Max Zelickson were employes of the fruit company and engaged in the course of their employment at the time of the accident.

The building was constructed about 1896 by the late T. B. Walker. It covers an entire block and is divided into stores which are rented to various tenants. It is three stories high and is of mill construction throughout with brick fire walls every 40 feet from front to back. In the original construction of the building, the beams and joists were of laminated timbers, that is, they were made of planks nailed together. Some portions of the building still remain in their original form and still contain laminated timbers for joists.

In 1933 a fire occurred in that part of the building designated as 208-210 North Sixth street. It started in the rear of the building and followed the elevator shaft up to the top, spreading out in fan shape as it went. The Ganley company was engaged by defendant to repair the damage wrought by the fire. In its repair the Ganley company put in new timbers under all of the third floor except a space 21 by 22 feet in the front part of No. 210,

which space caved in as hereinafter described. Before the fire, No. 208 and No. 210 were separate stores. In the course of the repair they were made into a single unit, but otherwise there were no substantial changes. The portion of the second floor underneath the 21-by-22-foot space in which the old timbers remained was used as an office, and its ceiling was covered with a composition material and painted. The rest of the second-floor ceiling was open and the new timbers readily observable. The old timbers and beams supporting the area over the office were entirely covered.

In January 1936 defendant leased 208 and 210 to the Morris Fruit & Produce Company. The lease provided that the lessee should make repairs and was to bear the responsibility for any accident "due to the demised premises." The fruit company had formerly leased other premises from defendant. It was engaged in the wholesale fruit and vegetable business and changed locations because of its need for larger quarters. It also sold at wholesale ginger ale and other soft drinks. The testimony is that such bottled goods weigh about 40 percent more than fruits and 60 percent more than vegetables. The third floor was used entirely for storage. The offices were on the second floor, and the first floor was used for displays.

On the morning of October 27, 1937, employes of the Morris company unloaded a carload of bottled goods and stored it on the third floor of 208-210. Thereafter that morning the front part of No. 210 consisting of the 21-by-22-foot area above mentioned collapsed. Max Zelickson was killed in the crash and Mrs. Murphy was seriously injured. The evidence shows that at the time of the collapse there were about 1,200 cases of beverages on the front two-thirds of the third floor. The cases were piled six high, with an aisle in the middle about six feet wide, and an aisle three feet wide at the front. Defendant was acquainted with the type of products handled by the Morris fruit company.

Asserting that the trial court erred in denying its motions for judgment or a new trial, defendant contends: (1) That the evidence does not sustain a finding of negligence on its part; (2) that

the court erred in denying its motion to bring in additional parties; (3) that certain evidence was wrongfully admitted; (4) that misconduct on the part of plaintiffs' counsel prejudiced defendant; (5) that the damages were excessive.

■ In Murphy v. Barlow Realty Co. 206 Minn. 537, 541, 289 N. W. 567, 570, we said:

"In these cases we have construed the complaints as pleading that defendants deliberately constructed and concealed a dangerous 'trap,' known to the owners and concealed from their tenant. The landlord is liable in such a case to anyone rightfully on the premises for injuries sustained by reason of the effectually concealed work of his own negligence although he is under no contractual duty to inspect, repair, or keep in repair. Keegan v. Heileman Brg. Co. 129 Minn. 496, 152 N. W. 877, L. R. A. 1916F, 1149; Ames v. Brandvold, 119 Minn. 521, 138 N. W. 786; Honan v. Kinney, 205 Minn. 485, 286 N. W. 404."

Guided, no doubt, by these statements, the trial court instructed the jury thus:

"Now, then, there are virtually four propositions involved here that plaintiffs must establish before they can recover. First, there must be a finding that there was a trap or a hidden danger. If, upon considering all the evidence, all the facts and circumstances disclosed by the evidence, you find that this was not a trap or a hidden danger, as we have outlined to you, then that ends the case right there. But, if you find that there was a trap or a concealed danger and the Barlow Realty Company knew about that when the premises were leased and delivered into the possession of the Morris Fruit & Produce Company, it became their duty to disclose that fact to them, and if they carelessly and negligently failed to do so, knowing it was there, that is wrongful, and if, because of that lack of knowledge of the trap, the Morris Fruit Company went in there and used it in the ordinary course of business for which it was intended to be used and understood to be used, then liability would attach to the Barlow Realty Company for all harm

that resulted proximately and directly from their wrongful conduct.

"The court has further held that the lessee takes the premises as they are, in the absence of an agreement to repair and, unless there is concealment on the part of a landlord in failing to give notice of hidden danger of which the landlord has knowledge, there is no liability on the part of the landlord. Now, those are the propositions of law that are applicable to the issues involved in this case, and the jury is called upon now to determine from the evidence what the true facts are and to apply these rules of law to the facts as you find them to be and return a verdict accordingly.

"If you find that there was no knowledge on the part of the defendant that there was a trap there, if there was one at all, and the cause of this disaster was wholly and entirely the fault of the Morris Fruit Company in placing on there too heavy a weight, more than ordinarily a building of that kind would stand and for that reason it collapsed, then of course the Barlow Realty Company would not be liable. You must find some fault on the part of the Barlow Realty Company before you can hold them liable in damages for anything.

"Now, then, after you have considered all the evidence, all the facts and circumstances disclosed by the evidence here fairly and impartially, if you then come to the conclusion that the Barlow Realty Company is responsible because of its carelessness, negligence or omissions to do that which they were obligated to do under the law, as I have stated it to you—did they know this was a trap and did they fail to disclose it—then you will proceed to determine what the award of damages should be."

The instructions so given are conceded by defendant to be correct; in fact, it does not challenge any part of the charge. Instead, it contends that plaintiffs failed to prove the existence on its premises of a trap or hidden danger and failed to prove knowledge by defendant of the hidden danger, if such existed. We need not devote much space to a discussion of those issues. Suffice it to say that both presented fact questions which were resolved against defendant by the jury, and there is ample evidence to sus-

tain the finding of the jury on both questions. At the outset defendant is faced with the fact that the collapse in question occurred at the very area and the only area between the second and third floors where the joists were not replaced when the building was repaired after the fire in 1933. Common sense would indicate that there would be some deterioration in the structure of beams laminated as were those in question. There was testimony, expert and otherwise, as to the condition of the beams after the crash. The jury could have found from the evidence that the load over the part of the floor that caved was no greater than that over other parts of the floor. Those in charge of the repairs must have examined all of the beams in order to determine which needed to be replaced, and all were replaced except in the small area of 21 by 22 feet here involved. It appears that the old beams left in this area were so covered as to be invisible to one not present when the covering was put on. The fact that the new beams were visible in other parts of the building could easily leave the impression that the entire floor was similarly constructed. Nor can defendant be absolved from liability merely by saying that it did not know what it had an opportunity to learn and should have known. Its officers knew the age of the building. They negotiated with the contractor for its repair after the fire. The company authorized its Mr. Hodge to make arrangements for the repairs. He conferred with the contractor. He received information from the contractor which he communicated to the officers of the company and from time to time made suggestions to the contractor. He inspected the work as it progressed and reported its progress to the officers of the company. He approved the completion of the work and authorized the payment of the bills. He certainly knew what beams were being replaced and the reasons therefor. The jury could find, as it did, that Hodge had knowledge of the condition of the building and that the company through him also had knowledge.

Defendant admits that it did not advise the Morris Fruit & Produce Company of the danger and consequently is not absolved

from liability on that theory. The law on that question is stated in Honan v. Kinney, 205 Minn. 485, 487, 286 N. W. 404, thus:

"The general rule is that where there is no covenant or agreement by the lessor to keep the leased premises in repair he is not liable in tort to the tenant or his invitees for dangerous conditions or defects therein. But to this rule there is an exception that where there exists on the leased premises a hidden danger or trap known to the lessor but unknown to the tenant there is a duty on the lessor to disclose its existence to the tenant; failure so to do may constitute actionable negligence. This is the established law in this state by Ames v. Brandvold, 119 Minn. 521, 138 N. W. 786; Keegan v. G. Heileman Brg. Co. 129 Minn. 496, 152 N. W. 877, 878, L. R. A. 1916F, 1149; Normandin v. Freidson, 181 Minn. 471, 233 N. W. 14. This exception to the general rule is thus stated in the Keegan case [129 Minn 500, 152 N. W. 878, L. R. A. 1916F, 1149]:

" 'If there is a concealed trap or danger on the premises at the time of the leasing and its existence is not obvious but is known to the lessor and unknown to the lessee, the lessor is in duty bound to disclose it, and he is liable for negligent failure so to do, even though he makes no covenant or contract to make repairs.' "

Defendant was familiar with the business in which the Morris Fruit & Produce Company was engaged. That company was its former tenant. It knew the nature of the business to be conducted in the building. It now complains that the collapse was due to the negligence of the Morris Fruit & Produce Company in overloading the building. That issue was submitted to the jury under proper instructions not here challenged, and resolved against defendant. Even though the negligence of the Morris Fruit & Produce Company contributed to the collapse, defendant would not be relieved from liability if its negligence was a contributory factor and a proximate cause. The jury by its verdict found that it was. See Myhre v. Schleuder, 98 Minn. 234, 108 N. W. 216.

■ We see no abuse of discretion in the trial court's refusal

to bring in the Morris Fruit & Produce Company, Dave Posnick, and the Liberty Mutual Insurance Company as parties defendant. The Morris company was plaintiffs' employer. The Liberty Mutual was its workmen's compensation insurer, and Dave Posnick was the lessee's guarantor on the lease from Barlow Realty to Morris Fruit & Produce Company. Morris Fruit & Produce Company and Liberty Mutual Insurance Company, having paid workmen's compensation to plaintiffs, had a complete defense, and had they been brought in would have been entitled to a dismissal on the merits. Posnick being a guarantor on the lease between Morris Fruit & Produce Company and Barlow Realty Company, no cause of action had accrued or would accrue against him until liability had been established under the lease and a default ensued. What the defendant in reality sought was a cross action between defendant and the proposed parties on issues in which the plaintiffs were not interested. That practice does not prevail in this state. The cases cited by both appellant and respondents are not even remotely in point on the question presented.

■ It is urged by defendant that certain evidence, tending to prove that the timbers used in the original construction of the building which were not replaced after the 1933 fire are not approved by present-day building code requirements, was wrongfully admitted. It is true that this defendant could not be liable for a faulty construction in 1896. However, defendant undertook to repair the building after it had been damaged by fire, and it did replace the damaged timbers with new and approved timbers and covered the remaining old timbers. Defendant proved that the repairs made after the fire met the approval of the building inspector. Whether the old timbers should have been replaced after the fire even though they were not damaged by the fire, or whether defendant should have advised its tenant of the fact that they were old and laminated timbers were proper questions for the jury. We do not consider the evidence objected to as prejudicial to defendant, nor are we impressed with defendant's complaint as to the action of the court in directing a verdict in favor of the

Ganley company. There has been no appeal from that order, and we do not consider the question as being before us.

■ Defendant urges that a new trial should be granted because of the misconduct of one of plaintiffs' attorneys. The record contains the argument of Mr. Carroll, one of the attorneys for defendant, and that of Mr. Robb, one of the attorneys for plaintiffs. Some of the statements complained of are legitimate answers to the arguments presented by opposing counsel. Some of them are merely "glorified exaggerations" of certain parts of the testimony. Some transgressed the bounds of propriety, but we do not believe that any of the statements complained of are so prejudicial as to require the retrial of a case which took about three weeks to try the first time. After all, clients should not be unduly penalized for the indiscretions of their lawyers unless such indiscretions are of such a serious nature as to impede the even administration of justice. It hardly seems to us that after hearing testimony covering a period of about three weeks and after listening to an able presentation of defendant's claims by its counsel, the jury was greatly swayed by any of the remarks here under attack. As said by the court in Devine v. Chicago City Ry. Co. 167 Ill. App. 361, 364:

"It is the presumption of law that jurors are intelligent, honest, fearless and just. Courts are not justified in assuming that the mind of the jury is of such plastic and unreliable material as to at any unjustified word of debate neglect the instructions, abandon the evidence and disregard their oaths."

See also Smith v. G. N. Ry. Co. 133 Minn. 192, 158 N. W. 46. The statement made by Mr. Robb that "the Walker interests have denuded the northern part of this state. They have depleted our forests and pulled them into our rivers and taken them in to the lumber companies—" may have been good political argument, but it had no bearing on the issues here involved. We doubt, however, whether the jury knew what counsel for plaintiffs was driving at, and it is questionable whether he knew himself. We do not wish

to be understood as approving what was said. The trial court partially remedied the harm, if any there was, by his admonition. We repeat here the idea voiced by Mr. Justice Olson in Timm v. Schneider, 203 Minn. 1, 8, 279 N. W. 754. The trial courts have an important function to perform in the trial of a jury case and on their own motion should stop and, if necessary, chastise counsel when improper argument is being made. If they do so, it will be more effective and, we might add, more harmful to the offending counsel and his client than anything we might thereafter say in an opinion written after an appeal. In any event, we conclude that the statements complained of are not so prejudicial as to require the granting of a new trial. As will hereinafter be pointed out, the verdicts are amply justified by the evidence.

As to the contention that the damages awarded in the Zelickson case are excessive, we believe that the evidence adequately supports a verdict in the full amount allowed by the statute, $10,000. At the time of his death, Max Zelickson was 32 years old, was married, and had two small children. The fact that his widow has since remarried so that she now has another source of support for herself and her children does not divest her of her right to damages, the measure of which is properly determinable according to the circumstances at the time of the wrongful death. See note, 30 A. L. R. 121, and cases there cited.

There is some evidence in the Murphy case tending to show that plaintiff suffered some injuries prior to the time of the accident here involved in an automobile collision. Suffice it to say that the evidence concerning the causes of her present disability and the extent of her disability is quite conflicting, and it is not so overwhelmingly one way or the other that we would be obliged to interfere. Although the verdict is liberal, we do not deem it so excessive as to warrant interference by this court, especially in view of the fact that the trial court has sustained it.

Affirmed.

PETERSON, JUSTICE (concurring specially).

The question of misconduct of counsel is not before us for lack

of necessary action below on defendant's part to save the question for review. We often have reiterated and emphasized that the rule is that "ordinarily, in order to obtain a review of misconduct of counsel in argument, there must be an objection at the time of the alleged misconduct, *a request by the party claiming to be prejudiced for appropriate corrective action,* and a failure of the trial court to rule or act." (Italics supplied.) Eilola v. Oliver I. Min. Co. 201 Minn. 77, 80, 275 N. W. 408, 409. We have had occasion to follow the rule stated in such recent cases as State v. Soltau, 212 Minn. 20, 2 N. W. (2d) 155, and State v. Jansen, 207 Minn. 250, 290 N. W. 557. Here, numerous exceptions were taken by defendant to the closing argument of plaintiffs' counsel in respect to the matters discussed in the majority opinion. These were timely under District Court Rule 27 (f), 186 Minn. xxxiii; Eilola v. Oliver I. Min. Co. *supra,* 201 Minn. at p. 80, 275 N. W. 408. But there was no request for corrective action of any sort by the trial court. Because defendant did not request the trial court in its instructions to correct the misconduct now complained of, the questions now raised were not saved for review here under the rule stated.

The trial court attempted to correct the misconduct now complained of by instructing the jury to decide the case solely on the evidence received during the trial and to disregard any statements of counsel that did not conform to their recollection of "what the testimony was as given by the witnesses." At the close of the charge the court asked for corrections and suggestions from counsel. In response, counsel expressed satisfaction with the charge as given. By acquiescing in the charge *in toto,* defendant in effect assented to the cautionary instructions given as sufficient to correct the alleged misconduct. Where a party at the conclusion of the charge expresses satisfaction with the charge, he should be deemed to have assented to it as sufficient to correct any misconduct of counsel in his closing argument which requires correction and comment by the trial court. Eilola v. Oliver I. Min. Co. 201 Minn. 77, 81, 275 N. W. 408, and State v. Soltau, 212 Minn. 20,

2 N. W. (2d) 155, *supra*.

Otherwise I concur in the majority opinion.