LOUIS T. KOLAR, ADMINISTRATOR OF THE ESTATE OF JANE ANN KOLAR, DECEASED, APPELLANT, v. RAY L. DIVIS, APPELLEE.

140 N. W. 2d 658

Filed February 25, 1966. No. 36042.

Ivan A. Blevens, for appellant.

Chambers, Holland & Dudgeon and Tomek & Tomek, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

BROWER, J.

This action was brought in the district court for Butler County to recover damages for the alleged wrongful death of Jane Ann Kolar, a minor, by the plaintiff Louis T. Kolar, her father, as administrator of her estate, against the defendant Ray L. Divis. At the conclusion of the plaintiff's evidence the trial court sustained a motion of the defendant for a directed verdict and dismissed the plaintiff's petition. From an order overrul-

ing his motion for a new trial the plaintiff appeals.

The deceased, Jane Ann Kolar, who will be called Jane at times herein, at the age of 13 years, suffered death by drowning in a tragic occurrence which took place Monday, June 24, 1963. She lived with her parents, Louis T. Kolar and Ruby Kolar, and her brother, Tom, in Dwight, Nebraska. The family of the defendant Ray L. Divis consisted of himself, his wife, Nora Divis, and their two daughters, Jeryl, aged 10, and Janel, aged 8, at the time herein related. They lived on a farm 1½ miles east of Dwight. The two families had been close friends and the three girls who attended the same school had visited back and forth, at times staying at each other's home.

Jane Kolar had gone with the defendant and the Divis children to a softball game on Sunday. After the game they all went to the Kolar home where it was arranged that Jane would stay with the Divis family that night. Permission also was given on Jane's request for her to ride to Lincoln on Monday with the Divis family if rain prevented the defendant from working.

During the night it rained 3 inches, according to the rain gauge at the Divis farm. On Monday morning the Divis family brought Jane back to her home to change her clothes for the trip to Lincoln. At the filling station at Dwight the defendant learned there was a heavy rain west of Dwight and floodwaters were on Plum Creek. They all got in the car at the Kolar residence and, bidding goodby, left while it was raining. Defendant drove the car throughout the day. They drove about 2½ miles west to Plum Creek and joined quite a gathering of people watching the flood with debris coming down. After staying there 20 or 30 minutes, they turned around and took a graveled road which extends eastward on a course ½ mile south of Dwight. On their way they drove past the Divis farm where a draw was running bank full of water. This road would take them to Lincoln by way of Valparaiso. After driving about 12 miles east this

road ends in a T intersection with a north and south country road. They took the north fork and drove less than ¼ mile north where the road again turns east. A short distance after making this turn they could see, from the hill they were on, the Oak Creek valley and the town of Valparaiso, its outskirts being about ¼ mile to the east. The creek drains a considerable area to the north. It was up and water was running across the road.

Turning around they went back to the T intersection and this time took the south fork of the road. Going south they saw no water as the trees concealed the creek. The north and south road ends 1 mile south of the hill where they had stopped. They turned east at its end and proceeded a distance of ½ mile to the road's intersection with Highway No. 79. This is a north and south black-topped highway which goes through Valparaiso which lies about 1½ miles to the north of this intersection. Highway No. 79 as it extends southward was on their route to Lincoln. Instead of turning they drove straight east past the schoolhouse on the southeast corner of the intersection about a quarter of a mile to the farmyard of Joe Machek whom the defendant knew. In so doing they crossed Oak Creek on a bridge on the country road. Defendant had seen Machek moving in the farmyard and called to him, saying, " 'You'd better move your machinery fast, there's high water coming.' " Without stopping they turned around in the Machek drive and went back to Highway No. 79 at the schoolhouse intersection. There the ground is higher than in the valley. The defendant then drove northward across the highway bridge on Oak Creek where the road drops into the valley to the north and went to Valparaiso. He had no reason for going there except to see any flooding there. In going there, there was no water on the highway although they did see some to their right in a field across the railroad which runs across the val-

ley parallel to the highway and a short distance to its west.

Arriving in Valparaiso they turned west on main street and drove a couple of blocks. Defendant saw water on the west end of main street. They did not get out of the car. A man named Tom Shanahan said to the defendant, " 'Don't block the traffic; don't block the road; we're evacuating; get out.' " Drivers of other cars there were told to get out also. People in the town were going east.

They did not stop but made a U-turn and returned the way they came, going at the same rate of 35 miles per hour. From the higher ground near the south edge of town defendant could see water on the west side of the railroad tracks about ¾ of a mile from where the tragedy occurred. Later the tracks obscured it. He also saw water west of the highway at about this point. Some distance from town he saw water on the highway 2 blocks ahead of him. It had not been there when they had driven into town just a few minutes before. Defendant did not continue to observe the water but drove on, watching a car which he was following about 100 yards ahead which proceeded through safely. He did not stop the car when he came to the water but reduced its speed to 20 miles per hour. There were three places where the water crossed the highway. The car ahead of him appeared to be going through 2 or 3 inches of water but when they got there in the second stretch, it was 5 or 8 inches deep. Defendant thought he could go through by driving slowly. There was so little water you could see the road clearly. After he got about 50 feet into the water the ignition system shorted and the motor stopped. He looked over his shoulder. He testified: "All behind me there was just no railroad track; it was just all like Niagara Falls coming. You couldn't see nothing; no fence or weeds; no railroad track behind us, and the railroad is close there; it's probably 100 feet from the road. Q And the water was pouring

over it? A Yes, and I knew we had very little time to get out of there. Q You knew you were in trouble? A Then, yes. Q Did you get out of the car? A Yes. I got out as fast as I could and I opened both doors and I said, 'Get out. We have to run for it.' "

Defendant and his wife and the three little girls got out of the car and joined hands in an effort to create a chain so that one could hold on to the other. The defendant led the way with his two daughters next, then his wife, and then Jane Ann Kolar. They attempted to go south towards the bridge as they were two-thirds of the way across the valley. Within these few seconds the water had become nearly waist deep on the defendant and after they got out past the car a short distance the defendant's wife and the Kolar girl were swept away by the force of the water.

Mrs. Divis and Jane Kolar were drowned. Ray Divis and his daughters were rescued by Gerald Resh in a 10-ton truck.

Gerald Resh was going south on Highway No. 79 behind the defendant's car. He described in some detail the buildup of water south of Valparaiso west of the highway. He states, "I was watching to my west; I was looking at the water; there was quite a build up of water to the west; when I first went over the hill I seen the water on the highway down there." To the right water extended almost as far as you could see. The defendant's car was ahead of him. When he first saw it the Divis car was either in the water a short distance or just starting. The water was rising rapidly. He was concerned about the rising water and stopped his truck about 10 or 20 feet from the water. When he stopped, the Divis car was driving approximately in the center of the highway. He sat in his truck, leaving the engine running, and watched the Divis car. He saw they needed help and decided to go in and pick them up, driving about 5 miles per hour in low gear. He passed the defendant's car on its right because the flood had moved it. Eventu-

ally the car was pushed off the road. The water was swift and he had a hard time holding his truck on the pavement and trying to judge where the pavement would be. When he got to them defendant put one girl in the cab and he and the other girl clung to the truck's high running boards. He could feel the pressure of the water against the truck. He saw Mrs. Divis and Jane go under. He was worried about losing the truck. He drove the truck on through, stopping at the schoolhouse intersection, and when they looked back the whole valley was covered with water.

The trial court sustained the defendant's motion to dismiss the plaintiff's petition on the ground that the deceased was a guest in the defendant's automobile and because of that relation the defendant was not liable for her death except for gross negligence which the trial court held was not shown as a matter of law.

The errors attributed by the plaintiff to the trial court will be stated as they are discussed.

The plaintiff first contends that a person who undertakes to look out for a child who was invited to accompany him has a duty to take reasonable precaution for the prevention of injury to the child. Citations are given to authorities where this abstract rule is stated with respect to negligence generally but do not involve the application of law in the case of a guest riding in an automobile. We think it unnecessary to discuss these authorities or the rule stated. Plaintiff cites the case of Schroeder v. Donlin, 79 S. D. 311, 111 N. W. 2d 609. There a 4-year-old boy was invited to ride in a truck loaded with grain. He was injured in the bin of an elevator in which the defendant driver had negligently permitted him to enter while stopping to unload the grain. In that case the operation of the truck had nothing to do with the injury or the negligence alleged, and the child was of tender years. Cases considering the question of the status of an infant as a guest within an automobile guest statute are assembled in an annotation

appended to the case of Kudrna v. Adamski, 188 Or. 396, 216 P. 2d 262, 16 A. L. R. 2d 1297, at page 1304. The annotation states that the courts have taken the view that where a child beyond the tender age is in the position of a gratuitous passenger in a motor vehicle, such child is a "guest" within the meaning of the applicable guest statute. Among the cases set forth in the annotation following the stated rule with the ages of the respective minor guests set forth are Shiels v. Audette, 119 Conn. 75, 174 A. 323, 94 A. L. R. 1206, where the boy was 13 years old; Letterel v. Cerniglia, 274 App. Div. 896, 82 N. Y. S. 2d 670, in which an 11-year-old boy was accompanied by his mother; and Tilghman v. Rightor, 211 Ark. 229, 199 S. W. 2d 943, involving three boys aged 7, 9, and 14, who had hitchhiked a ride, where the Arkansas court declared the statute defining a guest made no exception favoring minors and the court had no authority to write one into the law. The statute of this state, section 39-740, R. R. S. 1943, makes no such exception either. It is the province of the Legislature to change the statute and not that of this court. In the case before us Jane was 13 years of age, had been graduated from the eighth grade, and the evidence shows she was bright in school and dependable in the tasks assigned her. Her parents had given their permission for her to accompany the defendant and his family on the trip. Under the circumstances we hold a 13-year-old child riding as a gratuitous passenger in a motor vehicle is a guest within the purview of section 39-740, R. R. S. 1943.

Plaintiff points out that Jane did not perish while within the vehicle of the defendant. Plaintiff cites cases where courts of last resort in other states have held that the guest statutes there under consideration do not apply in certain instances where one has alighted from the vehicle. Defendant cites other authority where the decision under the facts therein stated was to the contrary. We do not find it necessary to discuss these au-

thorities. In the case before us plaintiff's counsel does not point out any negligent act of the defendant after leaving the car. The tragedy happened within a few seconds thereafter and all the evidence clearly indicates that on alighting from the car the whole party because of the phenomenal augmentation of the flood and its violence were helpless. It would appear that but for being rescued by the truckdriver all would have perished. Plaintiff suggests nothing to the contrary.

Plaintiff contends that if it be held the deceased was a guest in defendant's automobile the court nevertheless erred in holding as a matter of law that no gross negligence was shown and because thereof dismissing the plaintiff's petition. He points out that the defendant had notice of flooding conditions throughout the trip. He digressed from the usual course of his journey to warn his friend, Joe Machek, of the coming of floodwaters and proceeded into Valparaiso without reason where he himself was warned. It is urged he should have noted the rapid buildup of the floodwaters and should have stopped his vehicle before driving into them.

In Shupe v. County of Antelope, 157 Neb. 374, 59 N. W. 2d 710, this court, quoting from 1 Shearman & Redfield on Negligence (Rev. Ed.), § 24, p. 50, stated: " 'Foresight, not retrospect, is the standard of diligence. It is nearly always easy, after an accident has happened, to see how it could have been avoided. But negligence is not a matter to be judged after the occurrence. It is always a question of what reasonably prudent men under the same circumstances would or should, in the exercise of reasonable care, have anticipated.' " We think this rule must be kept in mind in considering the evidence in the case before us. In Moses v. Mitchell, 139 Neb. 606, 298 N. W. 338, it was held: "Where a person driving an automobile is suddenly confronted with an emergency requiring instant decision, he is not necessarily guilty of negligence in pursuing a course which deliberate judgment might prove to be wrong." With

respect to the liability of a driver of an automobile to a guest passenger it was held in Davis v. Landis Outboard Motor Co., *ante* p. 391, 138 N. W. 2d 474: "* * * Negligence is not presumed and cannot be inferred from the fact that there was an accident.

"The burden of proof means the duty resting on one party or the other to establish by a preponderance of the evidence an issue essential to recovery.

"Gross negligence means great and excessive negligence; that is, negligence in a very high degree. It indicates the absence of slight care in the performance of a duty.

"The line of demarcation between gross and ordinary negligence is not always clear. The cases however are clear in their declaration that negligence to be gross must be great or excessive; must be in a very high degree; not alone a momentary distraction of attention; and not alone the absence of slight care in the performance of a duty."

We now consider the evidence in the case before us in the light of the rules of law herein set forth. It is true that as a result of the defendant's attempting to drive across the valley of Oak Creek at the precise time he did, the tragic death of the plaintiff's decedent as well as the defendant's wife occurred. The defendant had observed high water in the early stages of his driving. The plats in evidence clearly indicate those instances concerned other watersheds. Later he noticed the high water in the Oak Creek valley when stopping the car on the hill west of Valparaiso. In going south the creek was concealed by trees. He warned his friend Machek of high water coming and to move his machinery. In driving across the valley to Valparaiso there was no water on Highway No. 79 although some was observed across the railroad tracks. He saw high water in Valparaiso and was told to leave although the reason of the request appears to have been because of blocking traffic more than as a warning. He drove back without

delay. Instead of continuing to watch the buildup of water to the west of the railroad tracks as the truck-driver Resh did, defendant watched the car he was following which proceeded through the water on the road. It appeared to be going through 2 or 3 inches of water on the highway, and he proceeded evidently believing he could drive through without danger. When he reached that point it was 5 to 8 inches deep. The evidence all shows this flash flood came with a wall of water. The fact that the automobile only 100 yards ahead proceeded through safely, and in but a brief interval thereafter the defendant was in water up to his hips, shows this clearly. The weight of the water against the 10-ton truck, testified to by Resh, confirms it. Can the defendant's attempt to drive through the water on the highway which minutes before was dry, following a car ahead of him, under the circumstances be said to have been great and excessive negligence? Was it negligence in a very high degree which shows the absence of slight care? We think not. Again can we say that a reasonably prudent man in the defendant's position at the time would or should under the same circumstances have anticipated the danger caused by the almost incredible speed of the flood's augmentation? Again we think not. We find the plaintiff has failed to prove a prima facie case of gross negligence on the part of the defendant.

It follows that the trial court did not err in sustaining the defendant's motion for a directed verdict and in dismissing the plaintiff's petition, and its judgment is therefore affirmed.

AFFIRMED.