DORWYN K. JACOBS,
TRUSTEE FOR HEIRS OF PATRICK JACOBS,
v. MELBOURNE H. DRAPER AND ANOTHER.
JOHN G. RALSTON, INDIVIDUALLY AND
d.b.a. MELL-O-DEE ICE CREAM, APPELLANT.

142 N. W. (2d) 628.

May 6, 1966—No. 39,945.

112

*Cragg & Barnett,* for appellant.

*Stanley J. Mosio,* for respondent Jacobs.

*John R. deLambert* and *Murnane, Murnane, Battis & deLambert,* for respondent Draper.

NELSON, JUSTICE.

In this action to recover damages for death by wrongful act, the jury returned a verdict against defendant John G. Ralston, d.b.a. Mell-O-Dee Ice Cream. He appeals from an order denying his alternative motion for judgment notwithstanding the verdict or a new trial.

Ralston is the owner of an ice cream truck from which sales of ice cream are made to the general public. The normal method of operation of the truck at the time of the accident involved herein was for the operator to drive along the street, stop at the curb, and make sales from the truck to persons who might be in the immediate vicinity before moving on to a different location. Attached to the truck was a record-playing device and a loudspeaker, and the operator of the truck usually played a record to attract attention while driving and when he stopped to make sales.

Viewing the facts in the light most favorable to the verdict, as we are required to do, they appear to be as follows: About 6 p. m. June 16, 1962, the operator of appellant's ice cream truck drove into the McDonough Housing Project, which has several entrances at which signs are posted saying, "NO PARKING ANY TIME ON STREETS IN HOUSING AREA." Just below these signs appear signs saying, "SLOW WATCH FOR CHILDREN." After making a 5-minute stop to make sales, the operator drove the truck to the intersection of Timberlake Road and Biglow Lane within the same housing area, made a right-hand turn onto Biglow Lane, and stopped the truck some 6 to 10 feet from the intersection and next to the

curb, the truck facing in an easterly direction. The record-playing attachment was in full operation and some 20 to 30 children and adults gathered on the curb side of the truck to make purchases.

The other defendant, Melbourne Draper, had been driving his automobile north on Timberlake Road with the intention of turning onto Biglow Lane. Plaintiff's 3½-year-old son, Patrick Jacobs, was beside the ice cream truck with its other customers, but as the defendant Draper turned onto Biglow Lane and began moving east, Patrick darted from behind the front of the ice cream truck into the path of the Draper car. Draper was driving at a speed of 5 to 15 miles per hour and the record indicates that he attempted to avoid Patrick as he darted into the street but was unable to do so. Patrick died shortly afterward from injuries sustained in the accident.

The jury by its verdict exonerated Draper of responsibility for the accident but found Ralston negligent and his negligence the proximate cause of the accident, although there is nothing in the record to indicate that the operator of the ice cream truck was aware that Patrick had been in the vicinity immediately in front of the truck until after the accident had occurred.

The trial court in instructing the jury made it plain that to recover against either defendant plaintiff was required to prove that that party was negligent and that his negligence "was a direct cause of plaintiff's injury and damage." After explaining to the jury what the duty of reasonable care may include, the trial court said:

"* * * Whether or not a duty has been violated depends upon the risks of the situation, the dangers known or reasonably to have been foreseen, and all of the then existing circumstances.

"* * * Where a person knows or has reason to know that children are likely to be in the vicinity, the greater hazard created by their presence or probable presence is a circumstance to be considered in determining whether reasonable care was used. The duty, however, always remains the same—reasonable care under the circumstances."

The trial court also instructed the jury concerning certain ordinances and statutes after stating that it must "decide whether or not the statute

or ordinance is applicable, depending on what you find the facts to be," and if so, whether violation of any of them was a direct cause of the accident. The trial court then read St. Paul Legislative Code, § 145.01, which provides:

"No person shall, at any time, stop, stand, or park any vehicle, except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or other recognized emergency authority, or in obedience to a traffic control device, in any of the following places:

\* \* \* \* \*

"Any side of any street within John J. McDonough Homes Addition."

The court also read St. Paul Legislative Code, § 339.08, as follows:

"Peddlers or pitchman peddlers peddling from vehicles or pushcarts shall not stand upon any street or alley for the purpose of disposing of their goods, but this provision shall not prevent such peddlers from stopping for a sufficient length of time to complete a sale to such purchasers as may be present at the place where such stop is made."

The trial court next read Minn. St. 169.14, subd. 1, relating to speed restrictions, and § 169.34(6), which prohibits stopping, standing, and parking within 20 feet of a crosswalk at an intersection. The trial court at a later time explained that under Minn. St. 169.96 a violation of any of the provisions of c. 196 by any party to a civil action shall not be negligence per se but shall be only prima facie evidence of negligence.

Ralston contends on appeal that neither the parking ordinance nor Minn. St. 169.34(6) was intended to protect pedestrians and should not have been submitted to the jury for consideration. He also contends that the peddling ordinance authorized the operator of the truck to stop as he did for the purpose of making sales. In support of his contention that the parking ordinance and statute are inapplicable, he cites Denson v. McDonald, 144 Minn. 252, 175 N. W. 108. In that case the plaintiff had violated a statute by parking within 20 feet of a fire hydrant. The defendant argued that he would not have struck plaintiff's car if plaintiff had not violated the statute. This court rejected that argument, stating (144 Minn. 253, 175 N. W. 108):

"* * * The ordinance was not for the protection of the traveling public. Its purpose was to keep the hydrant accessible for quick use in case of need."

Plaintiff, however, contends that the basis for the parking ordinance is the protection of children and that the peddling ordinance, while granting a vendor the right to sell his wares upon public streets, is complementary to other ordinances and does not grant him a right to violate them. Plaintiff calls our attention to St. Paul Legislative Code, § 129.16, which provides in part:

"The Traffic Coordinating Unit is hereby authorized to establish 'No Parking Areas' upon any public street or alley, or part or portion of such streets or alleys where, in the judgment of said Unit, the elimination of parking may facilitate the movement of traffic, *reduce traffic hazards,* or eliminate a hindrance to traffic." (Italics supplied.)

He points also to the warning signs at the entrances to the housing project and to the fact that the project had provided easily accessible parking lots throughout the area, one of which was located some 30 feet from where the ice cream truck had been parked. In view of these facts he argues that the violation of the parking ordinance presents ample grounds upon which a jury could find that Ralston was negligent and that his negligence caused the fatal injury to Patrick.

In Osborne v. McMasters, 40 Minn. 103, 105, 41 N. W. 543, this court said:

"* * * Negligence is the breach of legal duty. It is immaterial whether the duty is one imposed by the rule of common law requiring the exercise of ordinary care not to injure another, or is imposed by a statute designed for the protection of others. * * * All that the statute does is to establish a fixed standard by which the fact of negligence may be determined."

Mr. Justice Mitchell in Akers v. Chicago, St. P. M. & O. Ry. Co. 58 Minn. 540, 544, 60 N. W. 669, 670, made an analysis of what constitutes actionable negligence quite appropriate to the solution of the legal questions involved in this case. He said:

"Actionable negligence is the failure to discharge a legal duty to the person injured. If there is no duty, there is no negligence. Even if a defendant owes a duty to some one else, but does not owe it to the person injured, no action will lie. The duty must be due to the person injured. These principles are elementary, and are equally applicable whether the duty is imposed by positive statute or is founded on general common-law principles."

We are satisfied upon the record here that the jury could properly find that Ralston did not discharge his common-law duty to use due care not to injure plaintiff's child.

It is well established that negligence is always a question of what reasonably prudent men under the same circumstances would or should, in the exercise of reasonable care, have anticipated, that foresight, not retrospect, is the standard of diligence, and that negligence is not a matter to be judged after occurrence. Kolar v. Divis, 179 Neb. 756, 140 N. W. (2d) 658. However, it is also clear that there are many situations in which a reasonable man is expected to anticipate and guard against the conduct of others. Prosser, Torts (3 ed.) § 33, p. 173, describes them:

"* * * Anyone with normal experience is required to have knowledge of the traits and habits of common animals, and of other human beings, and to govern himself accordingly. He may expect that horses left unattended in the road may become frightened and run away * * *. Upon much the same basis, he may be required to anticipate that persons who are ill or intoxicated may wander into places of danger, and that human beings who are placed in a position of peril will endeavor, more or less instinctively, to escape, and may do harm to themselves or others in the attempt. Thus he may be held liable if he causes an automobile to turn from its course, or a passenger to leap from a car, to avoid a collision.

"But beyond this, he is required to realize that there will be a certain amount of negligence in the world. In general, where the risk is relatively slight, he is free to proceed upon the assumption that other people will exercise proper care. * * * But when the risk becomes a serious one, either because the threatened harm is great, or because there is an especial likelihood that it will occur, reasonable care may demand precautions

against 'that occasional negligence which is one of the ordinary incidents of human life and therefore to be anticipated.' 'It is not due care to depend upon the exercise of care by another when such reliance is accompanied by obvious danger.' * * *

\* \* \* \* \*

"And when children are in the vicinity, much is necessarily to be expected of them which would not be looked for on the part of an adult. It may be anticipated that a child will dash into the street in the path of a car, or meddle with a turntable. It may be clear negligence to entrust him with a gun, or to allow him to drive an automobile, or to throw candy where a crowd of boys will scramble for it. * * * In all such cases, the question comes down essentially to one of whether the risk outweighs the utility of the actor's conduct."

Restatement, Torts (2 ed.) states the applicable principles as follows:

§ 298. "When an act is negligent only if done without reasonable care, the care which the actor is required to exercise to avoid being negligent in the doing of the act is that which a reasonable man in his position, with his information and competence, would recognize as necessary to prevent the act from creating an unreasonable risk of harm to another."

§ 302. "A negligent act or omission may be one which involves an unreasonable risk of harm to another through * * *

\* \* \* \* \*

"(b) the foreseeable action of the other, a third person, an animal, or a force of nature."

§ 303. "An act is negligent if the actor intends it to affect, or realizes or should realize that it is likely to affect, the conduct of another, a third person, or an animal in such a manner as to create an unreasonable risk of harm to the other."

The record is clear that Ralston by the manner in which the Mell-O-Dee truck was operated was making every effort to induce children as well as adults to buy ice cream. The operator of the truck came into and parked in an area where many children resided, used recorded music to attract customers, and was selling a product enticing in itself to children. Under

the circumstances it was foreseeable that children would be in the street and that their lives might be endangered by oncoming traffic unless defendant reasonably undertook to guard against injuries to them. It is clear from the evidence that the children were in substance consciously and directly invited into the area where the truck was parked, foreseeably an area of danger, and it therefore would not seem unreasonable to expect of the inviters a proportionately higher degree of foresight than they displayed. It appears to us that if the owner and operator of the ice cream dispensing truck did not as a matter of law violate any duty of care toward the children present, whether they were negligent is at least a fact question.

■ While this case is not an attractive nuisance case, it nevertheless is invested with much the same policy considerations the attractive nuisance theory was designed to recognize and satisfy, a fact recognized by the Kentucky court in Mackey v. Spradlin (Ky.) 397 S. W. (2d) 33, a case much like this one. There the Kentucky court held that the negligence of the defendant ice cream vendors, whose 7-year-old customer was killed by a passing dump truck while he was running from behind their vehicle, was that they should have realized the danger of just such an accident, with or without some degree of negligence on the part of the passing driver. The Kentucky court held that the vendors were negligent as a matter of law. Under the circumstances of this case, the jury's finding of negligence on the part of Ralston was clearly justified.

We think it clear also that even had the jury found negligence on the part of Draper a proximate cause of the accident, such negligence would not have been an independent act superseding the negligence of the ice cream dispensers since it was within the realm of reasonable foreseeability. As in the Mackey case, the gist of defendant Ralston's negligence was that he should have realized the danger of just such an accident, with or without some degree of negligence on the part of the passing motorist. Proximate cause is therefore to be determined, in the present case, as a fact in view of the circumstances attending it. See, Restatement, Torts (2 ed.) § 447; Hines v. Westerfield (Ky.) 254 S. W. (2d) 728; Mackey v. Spradlin, *supra*.

■ While the purposes of the parking ordinance were not clearly ex-

pressed, and we think the applicability of Minn. St. 169.34(6) to the facts of this case is questionable,[1] whether or not the ordinance and statute imposed any duty on vehicle operators toward pedestrians need not be determined since, if they did, violations of such duties by Ralston's operator would only be cumulative with his breach of the common-law duty of due care.

■ Defendant Ralston contends also that misconduct by plaintiff's counsel during his argument to the jury was so prejudicial as to require a new trial. Examination of the record leads us to the conclusion that plaintiff's counsel did in several instances pursue an improper and somewhat prejudicial line of argument before the jury, and we want to make it clear that such statements are not condoned by this court. We are mindful, of course, that a new trial is granted for misconduct of counsel, not as a disciplinary measure, but solely to prevent a miscarriage of justice. The most recent expression on this matter by our court occurred in Boland v. Morrill, 270 Minn. 86, 99, 132 N. W. (2d) 711, 720, in which counsel made statements in the course of argument somewhat similar to those complained of here. This court said:

"While these statements do go beyond the bounds of fairness, we do not believe that they are so prejudicial as to justify a new trial. Whether to grant a new trial for improper remarks of counsel during the trial is largely within the discretion of the trial court. *The primary consideration is prejudice.* * * *

"While we do not condone the last statement quoted above, which obviously was intended only for the purpose of prejudicing the jury, we do not think it would be sufficient to affect the outcome of the case. Some

---

[1] The statute prohibits parking within 20 feet of a crosswalk at the intersection. It may be argued that this was to give a clear and unobstructed view of the intersection and a strict construction of that statute might limit the protection to crosswalks only. In Woody v. Cope, 207 Tenn. 78, 89, 338 S. W. (2d) 551, 556, 4 A. L. R. (2d) 314, in considering a similar ordinance the Tennessee court held as follows:

"* * * [W]e think the purpose of the ordinance was not only to afford motorists a better view of the crosswalk * * *, but also to afford persons on the crosswalk a better view of approaching vehicles."

misconduct is so prejudicial it cannot be overcome. Here, the trial court has passed upon the question and was of the opinion that these statements would not affect the outcome of the lawsuit. We have frequently held that the trial court is in a better position than we are to determine the prejudicial effect of such statements upon the jury. * * * While these statements approach the area where counsel may find it necessary to retry a case, we are of the opinion that they do not require a new trial." (Italics supplied.)

We have no hesitance in saying that it would be better if some of the remarks had not been made, but upon the record as a whole it seems fair to assume that they did not influence the jury. As in Murphy v. Barlow Realty Co. 214 Minn. 64, 73, 7 N. W. (2d) 684, 690:

"It is the presumption of law that jurors are intelligent, honest, fearless and just. Courts are not justified in assuming that the mind of the jury is of such plastic and unreliable material as to at any unjustified word of debate neglect the instructions, abandon the evidence and disregard their oaths."

Of course, whether there should be a new trial for misconduct of counsel rests almost entirely in the discretion of the trial court, and its action will not be reversed on appeal except for a clear abuse of discretion. Bush v. Havir, 253 Minn. 318, 91 N. W. (2d) 784.

It does not appear upon review of the record here that the jury was influenced by passion and prejudice — the verdict is clearly not excessive, and the determination that Ralston was negligent is not evidence of passion or prejudice. It is our view that the same conclusion should be reached in the present case as in Boland v. Morrill, *supra,* on the issue of misconduct since the errors complained of are without prejudice and the evidence submitted justifies the verdict.

Affirmed.

OTIS, JUSTICE (concurring specially).

In my opinion by adopting the rule applied in Mackey v. Spradlin (Ky.) 397 S. W. (2d) 33, all of the other negligence issues are rendered moot.

Rogosheske, Justice (concurring specially).

I concur in the result.

Mr. Chief Justice Knutson took no part in the consideration or decision of this case.